615 P.2d 263

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**David L. CHRISTOPHER,
Defendant-Appellant.**

No. 12718.

Supreme Court of New Mexico.

Aug. 7, 1980.

Martha A. Daly, App. Defender, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Arthur Encinias, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

FEDERICI, Justice.

Defendant-appellant was tried and convicted for first degree murder of his wife. He was sentenced to life imprisonment. He appeals.

The following issues are before this Court:

1. Whether statements contained in the "Juror's Handbook" were prejudicial.

2. Whether cross-examination of character witnesses concerning 23-year old convictions of the defendant was relevant.

3. Whether cross-examination of character witnesses concerning an alleged beating by defendant of his wife was properly admitted.

4. Whether a mistrial should have been granted when the prosecutor asked for a second time a question involving hearsay to which a previous objection had been sustained.

We affirm the trial court on Points 1 and 4 and reverse on Points 2 and 3.

Prior to impanelment prospective jurors were given a "Juror's Handbook" designed to acquaint them with jury service. During voir dire, all but two panel members indicated they had read the handbook. Defendant moved to strike for cause all jurors who had read the handbook. The motion was denied, defendant exhausted his peremptory challenges, and jurors who had read the handbook were impaneled.

During the trial, defendant presented six character witnesses to testify to his peacefulness. None of them had known him for more than six years. The prosecutor, on cross-examination, asked each of these witnesses whether he or she had heard or had

knowledge of defendant's 1957 convictions for rape, assault with intent to commit armed robbery, and two armed robberies. Only one of the witnesses had knowledge of any of the convictions. Defendant objected to all of the questions concerning the 1957 convictions.

Two of the character witnesses were also asked, during cross-examination, whether they knew about a recent incident in which defendant had beaten his wife; they answered in the negative. On redirect, both witnesses stated that they were unaware of a polygraph test indicating defendant had not beaten his wife on the occasion in question. On recross, the prosecutor then asked one of the witnesses whether she was "aware that photographs were taken of [his wife] with the injuries." The witness stated that she was not.

After the defense rested, the State called a police officer who testified about a disturbance involving defendant and his wife, in which the State elicited information showing defendant's wife had informed the officer about a gun in the house. Defendant was sustained on a hearsay objection to this testimony. A few minutes later, the prosecutor elicited this same information from the officer. An objection was again sustained, and the jury was told to disregard the question. Defendant's motion for a mistrial was denied.

I.

The statements in the "Juror's Handbook" of which defendant complains read:

If a jury cannot arrive at a verdict within a reasonable time and the judge is so advised, he can, in his discretion, order the jury dismissed with the result that another trial of the case usually follows with consequent added expense to all parties. It is, therefore, highly advisable that a verdict be rendered if that can be done with the sincere and honest judgment of the required number of jurors.

These statements represent part of a paragraph from a 12-page booklet distributed by the Fifth Judicial District to prospective jurors. Defendant alleges that the above statements amount to an "Allen" charge to the jury, and such statements require reversal of the trial court because they allegedly created prejudice to defendant.

■ An "Allen" charge is an instruction given by a judge to the jury during the course of deliberations, when the jury has failed to reach a verdict. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). It was first approved by the Supreme Court of the Territory in Territory v. Donahue, 16 N.M. 17, 113 P. 601 (1911). Since Donahue, it has been greatly criticized, and this Court has severely limited its use. See State v. McCarter, 93 N.M. 708, 604 P.2d 1242 (1980). In McCarter, three important factors were present: the jury sent a note to the trial judge during deliberations informing the judge of the numerical division of the jury; the judge sent a note back to the jury mandating them to consider further deliberations; and, the defendant was not present during the above proceedings. We held that the trial court should have granted a new trial because that situation created a presumption of prejudice which the State did not sufficiently rebut.

■ The McCarter standard can only apply to the present case if we determine that the statements amounted to an "Allen" charge. They differ significantly. The handbook is given to prospective jurors prior to impanelment for trial, as an informative guide. It includes information on many aspects of a trial to familiarize jurors with the trial process. An "Allen" charge is given by a judge to the jury at a crucial period of a trial. The primary purpose of the "Allen" charge is to encourage further deliberations in an attempt to prevent a mistrial. The statements from the "Juror's Handbook" do not constitute a charge to the jury nor are they given in the context of a charge. The statements in the "Juror's Handbook" do not amount to an "Allen" charge. Therefore, the burden is upon defendant to show specifically how the statements prejudiced the deliberations of the jury. State v. White, 74 Wash.2d 386, 444 P.2d 661 (1968). See also People v. Lopez,

32 Cal.2d 673, 197 P.2d 757 (1948). Here, defendant has not shown that the jury either deliberated hastily or was coerced into unanimity because of wording in the handbook. The trial court was correct in denying the motion for a mistrial on these grounds.

## II.

Defendant objects to the State's cross-examination of his character witnesses concerning convictions twenty-three years prior to the present trial. He states that the prior convictions are not relevant and even if they are, their prejudicial effect outweighs any probative value.

■ Admissibility of evidence on relevancy grounds is controlled by N.M.R.Evid. 402, N.M.S.A.1978. It requires that evidence must be relevant to be admissible. N.M.R. Evid. 401, N.M.S.A.1978, defines relevant evidence as: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■ Here, we have six witnesses who testified to the defendant's reputation for peacefulness. In such a situation, the prosecutor is permitted to test the witnesses' grounds of knowledge. 3A Wigmore, *Evidence* § 988 (Chadbourn Rev.1970) at 912. *See* N.M.R.Evid. 405, N.M.S.A.1978. If the witness knows of reputed prior bad acts of the defendant which do not affect his opinion, the witness may be discredited and if the witness does not know of reputed prior bad acts of the defendant which may be generally known in the community, the basis of the witness' opinion is deficient. Inquiry into the basis of the witness' information, accuracy and credibility is almost universally admissible. 3A Wigmore, *Evidence* at 913. On the other hand, the rumor of the misconduct about which the prosecutor inquires tends to fix the rumor as a fact in the minds of the jury. The anomaly of allowing inquiry in this situation is that it brings information before the jury by hearsay only, and not by trustworthy informa-

tion. Generally, this type of information cannot be introduced by direct proof. N.M. R.Evid. 404(b), N.M.S.A.1978. 3A Wigmore, *Evidence, supra*, at 921, opines on this practice:

> This method of inquiry or cross-examination is frequently resorted to by counsel for the very purpose of injuring by indirection a character which they are forbidden directly to attack in that way; they rely upon the mere putting of the question (not caring that it is answered negatively) to convey their covert insinuation. The value of the inquiry for testing purposes is often so small and the opportunities of its abuse . . . are so great that the practice . . . should be strictly supervised.

Defendant urges us to adopt a rule similar to N.M.R.Evid. 609(b), N.M.S.A.1978. This would impose an absolute limit of ten years upon inquiry into convictions or release from imprisonment more than ten years prior to the present alleged crime. We note that the jurisdictions which have considered this problem have arrived at a wide range of conclusions. In *People v. Stanton*, 1 Ill.2d 444, 445, 115 N.E.2d 630, 631 (1953), the court stated:

> The law is clear that particular acts of misconduct cannot be shown, either on cross-examination or in rebuttal of proof of good character. (Citations omitted.)
>
> The rule is based upon the ground that every man is presumed to be ready at all times to defend his general character but not his individual acts.

At the other extreme, the State directs us to *Cherry v. State*, 502 S.W.2d 9 (Tex.Cr. App.1973), which permitted inquiry into a thirty-five year old forgery conviction on cross-examination of a character witness during a murder case.

The leading case which discusses this question is *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). In that case, the prosecutor questioned four character witnesses about their knowledge of an arrest 27 years prior to trial. The court stated:

Events a generation old are likely to be lived down and dropped from the present thought and talk of the community and to be absent from the knowledge of younger or more recent acquaintances. The court in its discretion may well exclude inquiry about rumors of an event so remote, unless recent misconduct revived them. But two of these witnesses dated their acquaintance with defendant as commencing thirty years before the trial. Defendant, on direct examination, voluntarily called attention to his conviction twenty years before. While the jury might conclude that a matter so old and indecisive as [a 27 year old] arrest would shed little light on the present reputation and hence propensities of the defendant, we cannot say that, in the context of this evidence and in the absence of objection on this specific ground, its admission was an abuse of discretion.

*Id.* at 484, 69 S.Ct. at 222–223.

We agree with the Court's reasoning, but several critical factors appear in the *Michelson* case: (1) the trial judge took pains to ascertain, out of the presence of the jury, that the prior crime was an actual event; (2) two of the witnesses had known the accused at the time of the prior crimes, while the other two had known him for 15 years; (3) the trial court had carefully instructed the jury twice during the trial and once in the charge to the jury to consider the inquiry only for the limited purpose of evaluating the basis for the witnesses' opinions; (4) the defendant had voluntarily entered into evidence the issue of his conviction for a 20–year old crime; and (5) there was no specific objection made by the defense attorney at the trial.

■ In the present case, we find that: (1) the trial judge conducted no *in camera* inquiry to determine whether the prior alleged events had occurred; (2) none of the witnesses had known the accused for more than six years; (3) the trial court did not instruct the jury at all concerning the limited purpose of the prosecutor's inquiry on the subject; (4) the defendant offered no evidence of specific prior acts, either good

or bad, to the jury; and (5) the defense attorney did specifically object to the inquiry made by the prosecutor.

These facts are determinative. While we adopt the reasoning of the *Michelson* case, it is distinguishable. The present situation is precisely the type of situation that the rule on relevancy is attempting to avoid. *See People v. Dorrikas*, 354 Mich. 303, 92 N.W.2d 305 (1958). The trial court was in error on this issue, and is reversed.

### III.

Upon cross-examination of one of defendant's character witnesses, the following exchange occurred:

Prosecutor: And did you know, or have you been told, that back on the 14th of October of '78, that the Defendant beat up his wife  .  .  .  .

Defendant: I'd object, your Honor, no foundation.

Witness: I didn't know that either.

Court: I am allowing the question.

Upon redirect examination, defendant brought out that he had taken a polygraph test concerning charges brought by his wife on the above alleged incident, and that he had passed the test, and that the charges were later dismissed when the victim failed to show up for trial. Upon recross-examination, the prosecutor asked: "Are you aware that photographs were taken of her with the injuries, of his wife"? Substantially the same colloquy took place as to another character witness, except there was no cross-examination of that witness.

■ Defendant contends that the questions concerning the beating and the photographs were improper and constituted error. We agree.

The trial court should have ascertained the veracity of the prosecutor's questions concerning the alleged beating before allowing the prejudicial questions. *Michelson, supra. See Annot.*, 47 A.L.R.2d 1258 (1956).

Here, there was a significant dispute as to whether defendant did beat his wife, as alleged. Defendant's objection could have

been more clearly stated, but upon objection, the trial court was alerted and should have heard from both attorneys outside of the presence of the jury, to determine whether the target of the prosecutor's question was an actual event.

In the case at bar, it appears that defendant's wife filed an assault and battery charge against him. However, the mere filing, without more, and in light of the dispute by defendant, does not demonstrate the alleged beating was an actual event.

Even if the questions were allowed, the judge should have instructed the jury as to the limited purpose of the questions. *Mullins v. United States*, 487 F.2d 581 (8th Cir. 1973); *Gross v. United States*, 394 F.2d 216 (8th Cir. 1968), *cert. denied*, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970). This is specifically addressed in N.M.U.J.I.Crim. 40.27, N.M.S.A.1978. There, the Use Note states that the instruction is to be given "upon the completion of the testimony of the witness, as well as at the time the final instructions are given to the jury. . . . The necessity of a jury instruction explaining the limited purpose of the question is assumed by the court."

Allowing the prosecutor's question without determining the veracity of the question and without an instruction to the jury on the limited purpose of the questions constituted reversible error.

### IV.

Defendant contends that a mistrial should have been declared when the prosecutor persisted in eliciting evidence to which objection had been sustained. The evidence concerned whether the alleged victim had told a police officer about a gun in the family home after a disturbance in the home more than two months prior to her death. Both times the prosecutor questioned the witness concerning the gun. The witness answered that Mrs. Christopher had told him about it before defense counsel objected. Upon objection, defense counsel was sustained. This evidence was miniscule in relation to the overwhelming amount of evidence also before the jury, and we can-

not say that this evidence contributed to defendant's conviction. Under these facts, any error committed was harmless. *See State v. Self*, 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975); and *State v. Gunthorpe*, 81 N.M. 515, 469 P.2d 160 (Ct.App.1970), *cert. denied*, 81 N.M. 588, 470 P.2d 309 (1970); U.S. *cert. denied*, 401 U.S. 941, 91 S.Ct. 943, 28 L.Ed.2d 221 (1971). Further, the trial court admonished the jury to disregard the question and answer the second time. Under the facts here, any error was cured. *State v. Garcia*, 79 N.M. 367, 443 P.2d 860 (1968).

The trial court is affirmed as to Points I and IV, and reversed as to Points II and III. We remand for a new trial consistent with this opinion.

IT IS SO ORDERED.

PAYNE and FELTER, JJ., concur.