**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-089**

**Filing Date: July 18, 2012**

**Docket No. 31,465**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellant,**

**v.**

**ROMAN ALVARADO,**

       **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellant

Templeman & Crutchfield
C. Barry Crutchfield
Lovington, NM

for Appellee

**OPINION**

**CASTILLO, Chief Judge.**

**{1}** Defendant was charged with first degree murder contrary to NMSA 1978, Section 30-2-1(A)(3) (1994), and tampering with evidence contrary to NMSA 1978, Section 30-22-5 (2003), in connection with a drive-by shooting which occurred on March 18, 2010. Defendant was acquitted by a jury of the underlying murder and convicted of tampering with evidence. The district court sentenced Defendant for fourth degree felony tampering with evidence of an "indeterminate" crime. The State now appeals, arguing that the district court erred in sentencing Defendant for fourth degree tampering with evidence of an indeterminate

crime rather than for third degree tampering with evidence of a murder. For the reasons that follow, we affirm Defendant's sentence for fourth degree tampering with evidence of an indeterminate crime.

## BACKGROUND

**{2}** On the evening of March 18, 2010, Elodia Navarrette was killed in her home as a result of a drive-by shooting in Hobbs, New Mexico. At trial, the State presented evidence that Defendant and four other individuals traveled to Navarrette's home in two vehicles. As the vehicles approached Navarrette's home, shots were fired out of each vehicle, and the vehicles fled the scene.

**{3}** The morning after the incident, one of the individuals found a rifle and a handgun in the trunk of her car. She contacted the other participants, and Defendant, along with one of the other participants, retrieved and removed the two guns sometime later.

**{4}** At trial, the jury acquitted Defendant of Navarrette's murder, but convicted him of tampering with evidence. When sentencing Defendant, the district court found that, because Defendant had been acquitted of the underlying murder, he could not be sentenced to a third degree felony based on tampering with evidence of that murder. Instead, the district court found that Defendant tampered with evidence of an indeterminate crime and found him guilty of a fourth degree felony.

## DISCUSSION

**{5}** The State argues on appeal that the district court erred in sentencing Defendant under the indeterminate crime provision because the court wrongly believed that it could not convict Defendant of tampering with evidence of a crime for which he had been acquitted. In response, Defendant argues that he was properly sentenced under the indeterminate crime provision because the jury did not determine, and was not asked to determine, the crime to which his tampering related. Without such a finding, Defendant argues that sentencing him for third degree tampering with evidence would have violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). We review this constitutional issue de novo. *See State v. Smith*, 2000-NMSC-005, ¶ 6, 128 N.M. 588, 995 P.2d 1030.

**{6}** Part A of the tampering with evidence statute defines "tampering with evidence" as "destroying, changing, hiding, placing[,] or fabricating any physical evidence with intent to prevent the apprehension, prosecution[,] or conviction of any person or to throw suspicion of the commission of a crime upon another." Section 30-22-5(A).

**{7}** Part B lays out the sentencing scheme for a defendant convicted of tampering with evidence. The sentencing section is tiered, allowing for different felony and misdemeanor levels depending on whether "the highest crime for which tampering with evidence is committed" is a capital, first, second, third, or fourth degree felony; a misdemeanor or a

2

petty misdemeanor; or an "indeterminable" crime. Section 30-22-5(B). Of particular relevance here, "if the highest crime for which tampering with evidence is committed is a capital, first, or second degree felony, the person committing tampering with evidence is guilty of a third degree felony[.]" Section 30-22-5(B)(1). "[I]f the highest crime for which tampering with evidence is committed is indeterminate, the person committing tampering with evidence is guilty of a fourth degree felony[.]" Section 30-22-5(B)(4).

**{8}** As an initial matter, we agree with the State that the district court was incorrect when it concluded that it could not convict Defendant of tampering with evidence of a crime for which he had been acquitted. It is clear from the plain language of the statute that a defendant need not be convicted of the underlying crime to be convicted of tampering with evidence of that crime; i.e., if a defendant disposes of evidence of a crime that someone else committed. *See* Section 30-22-5. In fact, the State need not prove that any crime occurred or any investigation took place for a defendant to be properly convicted of tampering with evidence. *State v. Jackson*, 2010-NMSC-032, ¶ 17, 148 N.M. 452, 237 P.3d 754 (stating that because the language of the tampering with evidence statute "focuses on the specific intent of the accused, the state need not allege any underlying crime to seek a conviction for tampering with evidence"). However, this determination does not end our inquiry.

**{9}** In *Jackson*, our Supreme Court provided a thorough analysis of the tampering with evidence "indeterminate crime" provision. *See id.* ¶¶ 26-27. The defendant in *Jackson* entered a conditional guilty plea to tampering with evidence by attempting to provide a false urine sample while on probation. *Id.* ¶¶ 3, 5. The defendant's argument on appeal was that the tampering statute applies only when the accused tampers with evidence of a separate, underlying crime and that while providing a false urine sample to his probation officer may have been a probation violation, it was not an independent crime. *Id.* ¶¶ 4, 6. Our Supreme Court disagreed, holding that when no underlying crime can be identified, a defendant may properly be convicted of tampering with evidence under the "indeterminate crime" provision. *Id.* ¶ 21. In so holding, the Supreme Court determined that the tiered sentencing structure of the tampering with evidence statute "expresses a legislative intent to equate the gravity of the tampering with the level of the underlying crime, if any." *Id.*

**{10}** In this case, the jury was instructed that in order to find Defendant guilty of tampering with evidence, the State was required to prove each of the following elements beyond a reasonable doubt: (1) that Defendant hid the firearms; (2) that Defendant intended to prevent the apprehension, prosecution, or conviction of himself; and (3) that the incident happened in New Mexico on or about the 19th day of March, 2010. *See* UJI 14-2241 NMRA. These jury instructions do not require the jury to determine the crime, if any, to which the evidence related. Defendant argues that, in the absence of a specific finding that the evidence with which he tampered related to the murder, sentencing him under the higher, third degree tampering provision would violate the constitutional requirements of *Apprendi*, 530 U.S. 466, *Blakely v. Washington*, 542 U.S. 296 (2004); and *United States v. Booker* 543 U.S. 220 (2005). We agree.

3

**{11}** In *Apprendi*, the trial judge had relied on New Jersey's hate crime law to extend the defendant's sentence after finding by a preponderance of the evidence that the defendant's offenses had been "motivated by racial bias." 530 U.S. at 471. The defendant appealed the sentence, and the Supreme Court struck down the hate crime law based on the Sixth Amendment right to trial by jury, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The United States Supreme Court applied *Apprendi* in deciding *Blakely*, which held that the state trial court's sentencing of the defendant to more than the statutory maximum for his offense on the basis of the sentencing judge's finding that the defendant acted with deliberate cruelty violated the defendant's Sixth Amendment right to trial by jury. 542 U.S. at 303-04. In so holding, the Supreme Court clarified that a defendant's constitutional rights are violated whenever a judge seeks to impose a sentence that is not based solely on "facts reflected in the jury verdict or admitted by the defendant." *Id.* at 303 (emphasis omitted). The Court went on to explain that

> the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.

*Id.* at 303-04 (emphasis, internal quotation marks, and citation omitted).

**{12}** In *Booker*, the United States Supreme Court applied the holdings of *Apprendi* and *Blakely* to the United States Sentencing Guidelines. *Booker* reaffirmed that any fact (other than a prior conviction) that is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. 543 U.S. at 244.

**{13}** Later, in *State v. Frawley*, our Supreme Court considered the decisions in *Apprendi*, *Blakely*, and *Booker*, in holding unconstitutional a provision of the Criminal Sentencing Act that allowed a trial judge to increase a defendant's basic sentence by up to one-third upon a finding of certain aggravating circumstances. 2007-NMSC-057, ¶¶ 3, 25, 143 N.M. 7, 172 P.3d 144. In so holding, our Supreme Court recognized that "the Sixth Amendment is violated *any time* a defendant is sentenced above what is authorized *solely* by the jury's verdict alone." *Frawley*, 2007-NMSC-057, ¶ 23.

**{14}** Here, the jury found only that (1) Defendant hid the firearms; (2) he did so with the intent to prevent his own apprehension, prosecution, or conviction; and (3) the crime happened in New Mexico on or about the 19th of March. The jury was not asked to indicate the crime, if any, to which the tampering related. An examination of the facts found by the jury allows a conviction for tampering with evidence of an indeterminate crime that does not

4

require a finding that the evidence related to a specific crime. Without this finding, sentencing Defendant for a more severe third-degree felony would violate the Sixth Amendment by exceeding the maximum sentence authorized by the facts as they were found by the jury. We therefore hold that, when the State seeks a conviction under Section 30-22-5(B)(1), tampering with evidence of a capital, first, or second degree felony, a determination that the defendant tampered with evidence related to a capital, first, or second degree felony must be made by the jury. Absent this determination, the court is limited to sentencing a defendant under the "indeterminate crime" provision.

**{15}** In its reply brief, the State argues that *Apprendi*, *Blakely*, and *Booker* do not apply because the finding that Defendant tampered with evidence of the murder is "inherent in the verdict[,]" and the jury's verdict "can only mean that the jury made the unremarkable factual finding that the tampering related to a murder." The State additionally argues that there can be no doubt "that the tampered[-]with evidence relates to a homicide, as that was the only crime under investigation and the only other crime charged here." We are unpersuaded. While the State presented evidence that would support a finding that the guns Defendant removed were the same guns used in the drive-by shooting, we are prohibited from drawing such an inference from the jury's verdict. *See Blaze Constr. Co., Inc. v. Taxation & Revenue Dep't*, 118 N.M. 647, 653, 884 P.2d 803, 809 (1994) ("It is well established that an appellate court will not find facts on appeal."). The jury was not asked to determine whether the guns Defendant removed were the same guns used in the drive-by shooting. Theoretically, the jury could have believed that Defendant tampered with evidence of a different crime or that he tampered with evidence of some act without determining what crime was involved. *See Jackson*, 2010-NMSC-032, ¶¶ 14, 31 (holding that nothing limits "tampering to circumstances where there is a separate, identifiable crime[;]" a defendant may be guilty of tampering with evidence even if it cannot be determined "what crime, if any, was involved").

**{16}** We hold that, when a defendant is charged with third degree tampering with evidence of a capital, first, or second degree felony, the current Uniform Jury Instructions are insufficient under the *Apprendi* line of cases. To secure a third degree felony conviction, the State must additionally prove, beyond a reasonable doubt, that the evidence with which the defendant tampered related to a capital, first, or second degree felony. Because that did not happen here, Defendant was properly sentenced under the indeterminate crime provision of the tampering with evidence statute.

**CONCLUSION**

**{17}** We affirm Defendant's conviction and sentence for tampering with evidence of an indeterminate crime.

**{18} IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

5

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**


_____

**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for** _State v. Alvarado_**, Docket No. 31,465**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Trial by Jury

**CRIMINAL LAW**
Murder
Tampering with Evidence