# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>April 13, 2015</u>

**NO. 32,664**

**STATE OF NEW MEXICO**,

      Plaintiff-Appellee,

v.

**MATTHEW SANCHEZ**,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen D. Pfeffer, District Judge**

Hector H. Balderas, Attorney General
Paula E. Ganz, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

{1}     Convicted of murder in the second degree and third-degree tampering with evidence, Defendant Matthew Sanchez asserts three points of appeal: (1) the district court committed reversible error by allowing the State to question a witness regarding a prior act of Defendant that led to an unrelated assault charge, (2) insufficient evidence existed to support his conviction for tampering with evidence, and (3) the district court's entry of conviction for third-degree tampering with evidence constituted fundamental error. We determine that Defendant's own areas of trial inquiry permitted the State, as allowed and limited by the district court, to inquire regarding the witness's awareness of the prior act. We also hold that Defendant's conviction for third-degree tampering with evidence was supported by sufficient trial evidence and was properly adjudicated. Accordingly, we affirm.

**BACKGROUND**

{2}     On September 10, 2011, Defendant fatally stabbed his friend Tupac Amaru Leyba (Victim) in the chest and later threw the weapon from his car window as he departed the scene of the stabbing. The knife was never recovered. At trial, Defendant testified and admitted that he stabbed Victim and lied to the police when interviewed following the fatal event. However, he maintained that he acted exclusively in self-

defense.

{3} During cross-examination of a State's witness (Witness), defense counsel asked if Witness remembered stating at a preliminary examination that Defendant "was a very nice guy, that he's very quiet and that he never really talked, that he was just a nice guy." When Witness indicated that she did recall making that statement, defense counsel went on to inquire of Witness whether Victim had enemies, what if any alcohol or other mood-altering substances had been consumed that night, and whether Victim habitually carried a weapon. After this exchange, the State notified the court that it intended to offer rebuttal evidence regarding Witness's opinion of Defendant's demeanor and character. Despite the State's warning, defense counsel further questioned Witness if she had ever seen Defendant "become aggressive in any way toward [Victim.]" Witness stated that she had not.

{4} Following this testimony, the State sought to rebut what it perceived to be the presentation of character evidence by Defendant. It argued that by eliciting opinion testimony from Witness regarding her impressions of Defendant's peaceable demeanor, defense counsel had opened the door to inquiry concerning three separate incidents that bore the potential capacity to change Witness's positive opinion of Defendant. The events consisted of Defendant: (1) discharging a gun over the heads of his family members, (2) threatening to kill a man over a debt, and (3) ramming a

law enforcement vehicle and fleeing from police. Defense counsel objected, arguing that his queries had not opened the door to the State's desired topics of rebuttal and that admission of such prior act evidence would unfairly prejudice Defendant.

{5} After pointing out that it was defense counsel's questioning that elicited the pertinent character trait of Defendant being a "calm and very nice guy" and recognizing the State's opportunity to "present evidence of something other than that[,]" the district court conducted an inquiry designed to determine whether the specific events of which the State proposed to question Witness were properly admissible. Although it initially ruled that admitting questions regarding the three prior incidents would cause undue delay and confusion of issues for the jury, after conducting its own research, the district court determined that Rule 11-404(A) NMRA, governing the admissibility of character evidence offered by a defendant and rebutted by the State, controlled the inquiry. Pursuant to the rule, the court permitted the State to question Witness regarding her awareness of one prior event in order to rebut the character trait placed at issue by Defendant.

{6} Although the court found each of the State's three desired topics of rebuttal inquiry to be supported by good faith, it nonetheless disallowed inquiry regarding the second and third events on the basis that both had been initially charged but were later dismissed by the State. Noting that Defendant was then separately indicted for

the crime of aggravated assault with a deadly weapon, the district court announced its intention to allow the State to question Witness regarding any awareness she possessed of Defendant having discharged a firearm over the heads of his family members. It further ruled that upon any such inquiry, Defendant would be entitled to a limiting instruction regarding the jury's use of that evidence. The parties submitted proposed versions of the question to be asked of Witness regarding the shooting incident, and based again on its research the court chose to allow a "modified . . . proposal of the State[.]" The question presented to Witness, in relevant part, was as follows: "Were you aware that . . . Defendant had been accused of aggravated assault with a deadly weapon for going to the property of an individual not associated with this case and shooting a gun five to six times?" When Witness declared herself to be unaware of the incident, the State asked: "If you were aware of that . . ., would your opinion have changed?" Witness responded affirmatively.

{7} Immediately thereafter, the district court verbally provided the jury with a previously agreed to limiting instruction, stating that it had "allowed questions by the prosecution to test the opinion previously expressed by this witness to the effect that . . . Defendant . . . is a calm and very nice person" and that the questions asked were "not in and of themselves evidence that the matters which form the basis of the questions did, in fact, occur and [the jury] must not consider these questions for any

4

purpose other than the right of the prosecution to test an opinion of a witness as to an asserted characteristic of . . . Defendant." The instruction was repeated and twice reiterated by the court prior to closing arguments and included within the printed instructions given to the jury prior to deliberation. The jury convicted Defendant of third-degree tampering with evidence and second-degree murder, and Defendant appeals.

**A.      The District Court Properly Admitted Rebuttal Character Evidence**

{8}      Defendant contends that the district court committed reversible error in allowing the State "to ask a question which recited unproven facts of an unrelated aggravated assault case against [Defendant]." Defendant specifically argues that the State's "naked assertion" of the occurrence of a separate shooting incident was highly prejudicial. He additionally appears to challenge allowance of the question on grounds that it violated the general prohibition on prior acts evidence.

{9}      Rule 11-404(A) governs both the allowance and limitation of character evidence. *See id*. It states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Rule 11-404(A)(1). However, an exception to this prohibition exists in criminal cases, permitting "a defendant to "offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer

5

evidence to rebut it[.]" Rule 11-404(A)(2)(a). Moreover, "[o]n cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct." Rule 11-405(A) NMRA. We review the admission of evidence during trial for an abuse of discretion and will not disturb a district court's ruling "absent a clear abuse of that discretion." *State v. Stanley*, 2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85.

{10}      We first emphasize that Defendant fails to provide any analysis or discussion of Rule 11-404, or Rule 11-405, whatsoever in his briefing. Moreover, Defendant does not appear to challenge whether his questioning of Witness during cross-examination was directed toward the establishment of his peaceable nature. Instead, Defendant relies exclusively on a single case, *State v. Christopher*, 1980-NMSC-085, 94 N.M. 648, 615 P.2d 263, in which our Supreme Court considered the propriety of the state's cross-examination of character witnesses regarding their knowledge of the defendant's criminal convictions twenty-three years earlier, as well as a separate and more recent allegation of spousal assault. *Id*. ¶ 2.

{11}      First addressing the prior convictions, our Supreme Court adopted the reasoning of *Michelson v. United States*, 335 U.S. 469 (1948) (upholding cross-examination inquiry of character witnesses regarding awareness of the defendant's prior conviction and the defendant's separate prior arrest), and determined that the

district court erred in allowing testimony regarding the prior convictions because: (1) the district court failed to conduct an inquiry into whether the past events had occurred; (2) "none of the witnesses had known the [defendant] for more than six years"; (3) the district court did not provide the jury with a limiting instruction; (4) "the defendant offered no evidence of specific prior acts"[;] and (5) defense counsel objected to the state's inquiry. *Christopher*, 1980-NMSC-085, ¶ 16-17. Separately, the Court considered the propriety of the state's inquiry into the alleged spousal assault and once more determined that the district court erred, in part, because the abuse claim was supported by nothing more than the wife's allegation; further, the district court neglected to separately assess the veracity of the state's desired questions. *Id*. ¶¶ 21-23. Again, the Court emphasized the district court's failure to instruct the jury as to the limited purpose of the state's questioning. *Id*. ¶ 25.

{12}     Defendant applies the *Michelson* factors, adopted in *Christopher*, and asks us to reverse on these grounds. However, *Christopher* and its analysis of the *Michelson* factors are distinguishable. First, we note that in spite of Defendant's reliance on the *Michelson* factors, our Supreme Court adopted that reasoning specifically with regard to the prior convictions at issue in *Christopher*. 1980-NMSC-085, ¶ 11. Here, whether or not Defendant had prior convictions was not at issue, nor was the admissibility of any such evidence. Furthermore, unlike the circumstances

surrounding the alleged spousal assault in *Christopher*, the district court here carefully assessed the veracity of the events upon which the State sought to question Witness and ultimately found only the shooting incident, for which Defendant's indictment by a grand jury was then pending, to be an appropriate avenue of rebuttive inquiry. In so ruling, the district court rejected two of the prior acts that the State maintained to be appropriate instances to rebut the implication of peaceableness provided to the jury during Witness's cross-examination by Defendant. Thus, the district court only allowed that which fit within the plain language of the rule and bore independent indicia of reliability pursuant to the independent charging process. Most critically, the court was repetitiously diligent in ensuring that the jury was aware of the limited purpose of the State's questioning. Not only did it provide an immediate verbal limiting instruction following Witness's responsive testimony, but it again verbally admonished the jury as to its limited ability to consider the testimony twice before closing arguments and again within the jury instruction packet. For these reasons, we conclude that *Christopher*, and its application of the *Michelson* factors, is distinguishable.

{13}     Apart from *Christopher*, we reiterate that while Rule 11-404(A) prohibits the admission of evidence of a person's character trait "to prove that on a particular occasion the person acted in accordance with the character or trait[,]" it does allow

8

a defendant to offer evidence of his or her own pertinent trait. Rule 11-404(A)(1), (A)(2)(a). Defendant, through his questioning of Witness, elicited evidence of his nice, quiet, and non-aggressive nature, going so far as to refresh Witness's recollection of her own prior testimony. Under Rule 11-404(A)(2)(a), such evidence is subject to rebuttal by the State. *See State v. Martinez*, 2008-NMSC-060, ¶ 24, 145 N.M. 220, 195 P.3d 1232 (stating that when a defendant offers evidence of his or her own good character, the defendant opens the door to the state's ability to question witnesses about "their awareness of information inconsistent with good character"). And while evidence of a person's character or character trait is typically only permitted to be proven by reputation or opinion testimony, pursuant to Rule 11-405(A) "specific instances of the person's conduct" are permitted on cross-examination of a character witness. Evidence allowed by both rules was precisely the nature of that which was made available to the jury during Defendant's trial.

{14}     Although we recognize that Witness was the State's witness, and the State was not cross-examining Witness, but redirecting, Defendant has not asserted the inapplicability of Rule 11-404(A) or Rule 11-405 on appeal, and like the district court before us, we note that this is a "parallel" situation where the State was essentially "cross-examining [Witness] on redirect and [seeking] to bring up" matters already raised by Defendant. As Defendant has cited no authority on this factual nuance, we

may assume none exists. *State v. Godoy*, 2012-NMCA-084, ¶ 5, 284 P.3d 410 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Thus, based on the distinguishable characteristics of *Christopher* and our interpretation of the directly applicable provisions of Rule 11-404(A)(2)(a) and Rule 11-405(A), we conclude that the limited inquiry allowed by the district court coupled with its repeated cautionary instructions did not amount to an abuse of discretion, and we affirm Defendant's conviction for second-degree murder.

**B. The Evidence was Sufficient to Support Defendant's Conviction for Tampering with Evidence**

{15}    Defendant challenges the sufficiency of the evidence against him for tampering with evidence pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1. Defendant argues that "a reasonable jury should have found him not guilty" due to the conflicting evidence presented at trial. Defendant maintains that "the clear weight of the evidence[] shows that he did not intend to mislead investigators when he disposed of the knife." The State responds that the evidence is for the jury to weigh, and the "jury may draw its own conclusions about Defendant's intent based upon [the] overt action of throwing the knife out the [car] window as he drove away" from the crime scene. We conclude that there was sufficient evidence presented to the jury to support

10

Defendant's conviction for tampering with evidence.

{16} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). We review the evidence in the "light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). In our capacity as a reviewing court, we do not share the original ability of the jury to view the evidence and witnesses firsthand; therefore, we defer to the jury's findings. *Id*. We will not "reweigh the evidence or attempt to draw alternative inferences from the evidence." *State v. Estrada*, 2001-NMCA-034, ¶ 41, 130 N.M. 358, 24 P.3d 793.

{17} Our Legislature has defined the elements of tampering with evidence to be: (1) "destroying, changing, hiding, placing or fabricating any physical evidence[,]" (2) "with intent to prevent the apprehension, prosecution or conviction of any person[,] or to throw suspicion of the commission of a crime upon another." NMSA 1978, § 30-22-5(A) (2003). Because tampering with evidence is a specific intent crime, conviction requires that the State present sufficient evidence to allow a jury to infer

11

both an overt act and the defendant's subjective, specific intent. *State v. Jackson*, 2010-NMSC-032, ¶ 11, 148 N.M. 452, 237 P.3d 754. However, "[w]hen there is no other evidence of the specific intent of the defendant to disrupt the police investigation, intent is often inferred from an overt act of the defendant." *Duran*, 2006-NMSC-035, ¶ 14.

{18} In this case, Defendant testified that after he stabbed Victim with a knife, he "jumped . . . in the car and . . . took off real fast" because he was scared and "just freaked out." He stated that he then "threw the knife out and . . . noticed [his phone] charger was hanging out." At this point, Defendant realized he had dropped his phone, further deduced its possible presence at the scene of the stabbing, and reversed direction to retrieve it. Upon arriving and observing that Victim remained where he had been stabbed, Defendant left. He explained to the jury that he did not want Victim to "start another conflict." When asked why he discarded the knife, Defendant stated that it "was [his] first reaction. [He] wanted to get it away" as he "just freaked out." He contended that his purpose in discarding the knife was not to avoid being implicated in the crime.

{19} Defendant's testimony describing having thrown the knife from his vehicle satisfies the first element of tampering insofar as his act removed or concealed an item of evidence. *See* § 30-22-5(A). Although Defendant contends that "the evidence

suggests [] a reasonable doubt . . . that [he] was guilty of tampering with evidence and that a reasonable jury should have found him not guilty," it is the role of the jury to weigh the credibility of a witness. *State v. Santillanes*, 1974-NMCA-092, ¶ 2, 86 N.M. 627, 526 P.2d 424. "The fact finder can choose to believe the [s]tate's testimony and disbelieve [the d]efendant's version of events." *State v. Fierro*, 2014-NMCA-004, ¶ 40, 315 P.3d 319, *cert. denied*, 2013-NMCERT-012, 321 P.3d 127. There is sufficient evidence in the record to support Defendant's conviction for tampering with evidence; therefore we affirm the conviction. *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 ("Where . . . a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal.").

**C.     Entry of Conviction for Third-Degree Tampering Did Not Constitute Fundamental Error**

{20}     Based on Defendant's act discarding the knife used to kill Victim, he was charged with third-degree tampering with evidence, which forbids tampering with evidence relating to a capital crime or of a first-or second-degree felony. Section 30-22-5(A), (B)(1). At trial, the jury was instructed that in order to find Defendant guilty of tampering with evidence, Defendant must have "hid or placed the knife" used to stab Victim in order to prevent his apprehension or prosecution. The jury was not, however, instructed that the evidence must have related to a second-degree felony.

13

Therefore, Defendant argues that he was improperly convicted of third-degree tampering because the State's tampering instruction failed to ensure the jury's determination that Defendant intended to prevent his conviction related to a particular crime. Absent such a finding, Defendant argues that his sentence for third-degree tampering with evidence violated his Sixth Amendment constitutional rights.

{21}     We typically review this constitutional issue de novo. *State v. Alvarado*, 2012-NMCA-089, ¶ 5, ___ P.3d ___. However, as Defendant concedes that this issue was not properly preserved, we review solely for fundamental error. *State v. Herrera*, 2014-NMCA-007, ¶ 4, 315 P.3d 343. "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146.

{22}     As we have stated, tampering with evidence is, in relevant part, "destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person[.]" Section 30-22-5(A). "Section (B) [of the statute] establishes levels of punishment depending on the degree of crime for which tampering with evidence is committed." *Jackson*, 2010-NMSC-032, ¶ 20 (internal quotation marks omitted). A person is guilty of third-degree

14

tampering "if the highest crime for which tampering with evidence is committed is a capital or first[-]degree felony or a second[-]degree felony[.]" Section 30-22-5(B)(1). "[I]f the highest crime for which tampering with evidence is committed is indeterminate," such that no crime underlying the tampering could be identified, a person is guilty of a fourth-degree felony. Section 30-22-5(B)(4); *Jackson*, 2010-NMSC-032, ¶ 21.

{23} Defendant was charged with tampering with evidence of a second-degree felony as prohibited by Section 30-22-5(B)(1). At trial, the district court generally instructed the jury on tampering with evidence; the instruction did not require the jury to find that Defendant's act of tampering related specifically to a second-degree felony. It merely stated that in order to find Defendant guilty of tampering with evidence, the State must prove beyond a reasonable doubt that Defendant "hid or placed the knife used to stab [Victim]" and by doing so, "[D]efendant intended to prevent his apprehension, prosecution, or conviction.

{24} Defendant relies upon *Alvarado*, where we held that "when a defendant is charged with third[-]degree tampering with evidence of a capital, first, or second[-]degree felony," the State must prove, beyond a reasonable doubt, that the evidence with which the defendant tampered related to the underlying felony. 2012-NMCA-089, ¶ 16. Because the State did not provide such proof, we determined that the

15

proper resolution was for the defendant to be sentenced under the indeterminate crime provision of the statute. *Id*. While we acknowledge the analogous nature of *Alvarado* and the case before us, we view Defendant's case to be more appropriately on point with *Herrera*, 2014-NMCA-007, where, in an identical fundamental error analysis, this Court considered the issue of whether, in the case of a conviction and sentence for third-degree tampering with evidence, the omission of a finding that the weapon was evidence of a second-degree felony violated a defendant's right to have a jury find all elements of the offense beyond a reasonable doubt. *Herrera*, 2014-NMCA-007, ¶¶ 4, 7. We determined that for the purpose of a Sixth Amendment challenge that argues for entitlement to a jury determination of guilt beyond a reasonable doubt as to every element of the charged crime, the factors contained within Subsection (B) of the tampering statute were such that they "must be interpreted as elements of the offence, rather than mere sentencing factors." *Herrera*, 2014-NMCA-007, ¶¶ 8, 13. Although we recognized that "the failure to instruct the jury on one of the elements of the offense of third-degree tampering with evidence was error[,]" offending the defendant's rights under the Sixth Amendment, the error did not amount to fundamental error as it was clear that on review of the entire record, the evidence presented at trial established the missing element. *Id*. ¶ 17.

{25}     Here, Defendant testified at trial that he stabbed Victim and "threw the knife

16

out" of the window of his moving vehicle. In finding Defendant guilty of tampering with evidence, the jury determined that Defendant "tossed the knife" with the intent to prevent his apprehension, prosecution, or conviction. Additionally, the jury found that the act of stabbing Victim with a knife was second-degree murder. Our review of the record herein reveals that the only evidence presented at trial that related to Defendant's discard of the knife was the act of stabbing Victim. Because the jury concluded that the stabbing constituted a second-degree felony, "the facts at trial established that the tampering related to a second-degree felony." *Id*. ¶ 18. While the factors contained in Subsection (B) of Section 30-22-5 are essential elements of the crime of tampering with evidence, and "the omission of an essential element of an offense will often be found to be fundamental error," the evidence at trial clearly established the missing element, and therefore, we hold that the district court did not fundamentally err. *Herrera*, 2014-NMCA-007, ¶ 17 ("If it is clear that the missing element was established by the evidence at trial, the fact that the jury was not instructed on the element is not considered fundamental error.").

**CONCLUSION**

{26}    For the forgoing reasons, we affirm Defendant's convictions for second-degree murder and third-degree tampering with evidence.

17

{27}    **IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**

_____

**M. MONICA ZAMORA, Judge**