**Certiorari Denied, December 4, 2013, No. 34,389**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-007**

**Filing Date: October 7, 2013**

**Docket No. 31,874**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**

**ISRAEL HERRERA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Charles C. Currier, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**KENNEDY, Chief Judge.**

**{1}** Israel Herrera (Defendant) raises a number of challenges to his convictions for second-degree murder and third-degree tampering with evidence. Defendant's most substantive argument is his contention that his conviction for third-degree tampering with evidence violated his constitutional rights to due process and trial by jury because the jury was not instructed that it must find that the evidence Defendant tampered with related to a

1

capital, first- or second-degree crime, which is an essential element of the crime of third-degree tampering. However, Defendant failed to preserve this claim of error, and we conclude the error was not fundamental where it was undisputed that the evidence he tampered with related to the second-degree murder that the jury found him guilty of committing. Thus, finding no other error, we affirm Defendant's convictions.

## I. BACKGROUND

{2} Defendant was at home one evening with his girlfriend and her child when someone began pounding on their front door. It was a friend of Defendant, who demanded that he be let in. Defendant and his girlfriend testified that the friend was shouting and swearing. They testified that they told the friend to go away, but he continued to pound on the door and shout for several minutes. Defendant claimed that his friend was angry and agitated and was behaving in a way that Defendant had never seen him behave before. Defendant stated he heard the friend say that he was going to spray Defendant's house with bullets. When Defendant heard this, he picked up a gun. Defendant watched his friend leave and go back to a van parked out on the street. Defendant stated he saw that his friend did not have a gun, but, as his friend got into the van and started backing out, he leaned over in a way that made Defendant believe that he was reaching under the seat. Defendant assumed that his friend was reaching for a gun, and Defendant fired one shot at him. Defendant went back inside and told his girlfriend to leave. Then, he went outside to the backyard and put the gun in a crawlspace underneath the house. He was walking around outside when the police arrested him and informed him that his friend was dead.

{3} Defendant was charged with first-degree murder and third-degree tampering with evidence, which involves tampering with evidence of a capital crime or of a first- or second-degree felony. At trial, Defendant did not dispute that he shot his friend, but argued that the killing was justified by self-defense. In the alternative, he argued that the killing was mitigated by sufficient provocation, such that he could only be found guilty of manslaughter. The jury found him guilty of second-degree murder and guilty of third-degree tampering with evidence. Defendant appeals.

## II. DISCUSSION

### A. Defendant's Right to Have the Jury Find All Elements of the Offense of Third-Degree Tampering With Evidence

{4} Based on Defendant's act of attempting to hide the gun involved in the shooting, he was charged with third-degree tampering with evidence, which applies when a defendant has tampered with evidence relating to a capital crime or of a first- or second-degree felony. NMSA 1978, § 30-22-5(A), (B)(1) (2003). At trial, the jury was provided with an instruction on tampering that required it to find that Defendant hid the gun in an effort to avoid being prosecuted, but did not require it to find that the evidence that was tampered with related to a first- or second-degree felony. Defendant contends that because the jury

2

did not find that his act of hiding evidence related to a first- or second-degree felony, his conviction for third-degree tampering with evidence violated his Sixth Amendment right to have a jury find all facts necessary to the conviction. "We review this constitutional issue de novo." *State v. Alvarado*, 2012-NMCA-089, ¶ 5, ___ P.3d ___. However, because Defendant concedes that this issue was not preserved, we will reverse only if any error rose to the level of fundamental error. *See State v. Sandoval*, 2011-NMSC-022, ¶ 15, 150 N.M. 224, 258 P.3d 1016. We conclude that, although the jury instruction omitted an essential element of the crime, the error was not fundamental under the circumstances of this case.

**{5}** New Mexico's statute criminalizing tampering with evidence imposes different sentences depending on the type of crime that the tampering was done to conceal. Subsection (A) sets out the elements common to all degrees of tampering. Subsection (A) describes the conduct that constitutes the basic act of tampering with evidence and states:

> Tampering with evidence consists of destroying, changing, hiding, placing[,] or fabricating any physical evidence with intent to prevent the apprehension, prosecution[,] or conviction of any person or to throw suspicion of the commission of a crime upon another.

Section 30-22-5(A).

**{6}** Subsection (B) provides that tampering with evidence may be a petty misdemeanor, a misdemeanor, or a third- or fourth-degree felony, depending on the crime that the tampered-with evidence relates to. Subsection (B) states:

> Whoever commits tampering with evidence shall be punished as follows:
>
> (1) if the highest crime for which tampering with evidence is committed is a capital or first[-]degree felony or a second[-]degree felony, the person committing tampering with evidence is guilty of a third[-]degree felony;
>
> (2) if the highest crime for which tampering with evidence is committed is a third[-]degree felony or a fourth[-]degree felony, the person committing tampering with evidence is guilty of a fourth[-]degree felony;
>
> (3) if the highest crime for which tampering with evidence is committed is a misdemeanor or a petty misdemeanor, the person committing tampering with evidence is guilty of a petty misdemeanor; and
>
> (4) if the highest crime for which tampering with evidence is committed is indeterminate, the person committing tampering with evidence is guilty of a fourth[-]degree felony.

3

Section 30-22-5(B). The determination pursuant to Subsection (B) that the act of tampering is a petty misdemeanor, a misdemeanor, or a third- or fourth-degree felony determines the sentence that is authorized by law. *See* NMSA 1978, § 31-18-15 (2007) (establishing the basic sentences and fines for felonies); NMSA 1978, § 31-19-1 (1984) (establishing the sentences and fines for petty misdemeanors and misdemeanors).

{7}     Defendant was charged with tampering with evidence of a capital crime or first- or second-degree felony as prohibited by Section 30-22-5(B)(1). At trial, the district court instructed the jury that, in order to convict Defendant of tampering with evidence, it had to find the basic facts that constitute tampering under Subsection (A). The instruction did not require the jury to find that Defendant's act of tampering with evidence related to a capital crime or a first- or second-degree felony. The instruction, which tracked Uniform Jury Instruction 14-2241 NMRA, simply stated:

> For you to find . . . [D]efendant guilty of tampering with evidence as charged . . . , the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.     [D]efendant hid a firearm;
>
> 2.     [D]efendant intended to prevent the apprehension, prosecution[,] or conviction of himself;
>
> 3.     This happened in Chaves County, New Mexico, on or about the 22nd day of November[] 2010.

The issue on appeal is whether the omission of the element that the gun was evidence of a capital crime or a first- or second-degree felony violated Defendant's right to have a jury find all elements of the offense beyond a reasonable doubt where the conviction and sentence entered by the district court was for the offense of third-degree tampering with evidence.

{8}     The right to a trial by jury is guaranteed by the Sixth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment. *State v. Grace*, 1999-NMCA-148, ¶ 5, 128 N.M. 379, 993 P.2d 93. The Fourteenth Amendment's Due Process Clause prohibits a conviction, except upon a finding of every element of the offense beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). "Taken together, these rights indisputably entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (alteration, internal quotation marks, and citation omitted). A fact is an element of a crime when it increases the legally prescribed punishment. *Alleyne v. United States*, ___ U.S. ___, ___, 133 S. Ct. 2151, 2155 (2013) ("Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt.").

4

**{9}** The United States Supreme Court has held that, when a statute provides a general definition of prohibited conduct and then lists a set of stepped sentences that increase based on additional factors, any factor listed in the sentencing section of the statute that increases the prescribed sentence is an element of the offense that must be found by a jury beyond a reasonable doubt. In *Jones v. United States*, 526 U.S. 227 (1999), the Supreme Court examined the federal carjacking statute to determine whether the portions of the statute setting different punishments were elements that must be found beyond a reasonable doubt by a jury, or mere sentencing factors that could be found by the district court. The carjacking statute began with a general section that defined the basic conduct of taking a motor vehicle by force that constitutes carjacking. *Id.* at 230. This definitional section was followed by three subsections that described the maximum level of punishment to be applied based on different factors. *Id.* The first of these, Subsection (1), stated that anyone who committed the basic act of carjacking as described in the definitional section would be imprisoned up to a maximum of fifteen years. *Id.* Subsection (1) thus set the basic sentence for the offense. Subsections (2) and (3), however, provided for increased sentences based on other factual scenarios. Subsection (2) stated that, if the carjacking resulted in serious bodily injury, the perpetrator would be imprisoned up to a maximum of twenty-five years. *Id.* Subsection (3) stated that, if the carjacking resulted in death, the perpetrator would be imprisoned for "any number of years up to life[.]" *Id.*

**{10}** At the trial in *Jones*, the jury instruction tracked the definitional section of the statute. *Id.* at 231. The jury found the defendant guilty of the the elements of the offense, which would have supported a sentence of not more than fifteen years imprisonment, pursuant to Subsection (1). However, at sentencing, the district court found that the evidence at trial demonstrated that the defendant had caused the victim to bleed profusely and to suffer numbness in his ear and permanent hearing loss, such that the defendant could be sentenced under Subsection (2) for carjacking causing serious bodily injury. *Id.* The district court believed that the bodily injury requirement of Subsection (2) merely involved a sentencing factor and not an element of an offense, such that this finding need not have been made by the jury. *Id.*

**{11}** The Supreme Court reversed. *Id.* at 232. Because the factual situations described in Subsections (2) and (3) increased the possible penalty from the basic maximum of fifteen years, the Supreme Court, as a matter of statutory construction, concluded that Congress intended these factors to be elements of the offense and not mere sentencing factors. *Id.* at 232-39. Although the Court noted that a contrary interpretation would be reasonable if one were to look solely at the language of the statute, it held that such an interpretation was constitutionally prohibited because to read Subsection (2) and Subsection (3) as merely containing sentencing factors would run afoul of the constitutional guarantees of due process and trial by jury. *Id.* at 239-52. *Jones* stated that these constitutional guarantees require that "any fact (other than [a] prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n.6. Therefore, the sentence imposed by the district court was invalid.

**{12}** Following *Jones*, the Supreme Court, looking at a different criminal statute, again identified any factor that increases the sentence for an offense as an element that must be found by a jury beyond a reasonable doubt. In *Alleyne*, the statute at issue was the federal law prohibiting a person from using or carrying a firearm in relation to a crime of violence. ___ U.S. at ___, ___, 133 S. Ct. at 2152, 2155. That statute provided that anyone who used or carried a firearm in relation to a crime of violence would

> (i)    be sentenced to a term of imprisonment of not less than [five] years;
>
> (ii)   if the firearm is brandished, be sentenced to a term of imprisonment of not less than [seven] years; and
>
> (iii)  if the firearm is discharged, be sentenced to a term of imprisonment of not less than [ten] years.

*Id.* at ___, 133 S. Ct. at 2155-56 (internal quotation marks and citation omitted). Unlike the statute at issue in *Jones*, this statute had no maximum penalty listed for any of the three options, such that a person sentenced under Subsection (i) could be sentenced to a term of imprisonment as high as someone sentenced under Subsections (ii) or (iii). Instead, each subsection imposed a different statutory minimum. As in *Jones*, however, the Supreme Court held that because the facts contained in Subsections (ii) and (iii) increased the prescribed sentencing range from the basic sentence set in Subsection (i), these facts were elements of the statute that must be submitted to the jury and found beyond a reasonable doubt. *Alleyne*, ___ U.S. at ___, 133 S. Ct. at 2158. Unlike *Jones*, which relied both on a legislative intent rationale and a constitutional one, *Alleyne* was purely based on constitutional reasoning.

**{13}** Pursuant to *Jones* and *Alleyne*, it is clear that the factors listed in Subsection (B) of New Mexico's tampering with evidence statute are elements of the offense for purposes of the Sixth and Fourteenth Amendments. These factors involve factual determinations about what type of crime the tampering was intended to conceal and are linked to increasing levels of punishment—from that imposed for a petty misdemeanor all the way up to that imposed for a third-degree felony. Therefore, they must be interpreted as elements of the offense, rather than mere sentencing factors, in order to avoid violations of the constitutional right to due process and the right to a jury trial.

**{14}** Our conclusion that the type of crime that the tampering is intended to conceal under Subsection (B) is an element that must be found beyond a reasonable doubt by the jury is consistent with the conclusion we reached in a slightly different context in *Alvarado*. There, the defendant was charged with first-degree murder and tampering with evidence. 2012-NMCA-089, ¶ 1. He was acquitted of the murder, but found guilty of the tampering charge. *Id.* ¶ 4. Because the district court believed that the defendant could not be found guilty of tampering with evidence of a crime of which he had been acquitted, the district court refused to sentence him for third-degree tampering with evidence of the murder and instead

6

sentenced him for fourth-degree tampering with evidence of an indeterminate crime. *Id.* The state appealed. *Id.* ¶ 5. On appeal, this Court agreed that the district court's reasoning was erroneous, but affirmed the fourth-degree tampering conviction under another rationale. *Id.* ¶¶ 8, 16. We held that, when a defendant is charged with third-degree tampering with evidence of a capital crime or a first- or second-degree felony, the constitutional rights to due process and to a jury trial require the state to prove, beyond a reasonable doubt, that the evidence with which the defendant tampered related to an offense of those types. *Id.* ¶ 16. Because the jury had not been so instructed, we agreed with the defendant's argument that he could only be sentenced with fourth-degree tampering with respect to an indeterminate crime.[1] *Id.*

**{15}** The State argues that *Alvarado* is limited to circumstances in which a defendant has been acquitted of the offense that the tampering was intended to conceal, but it provides no persuasive rationale for this assertion. *Alvarado* was based on the same constitutional principles at issue in this case, and its reasoning applies here. In *Alvarado*, we held that, although the state presented evidence that would support a finding that the guns the defendant tampered with were the guns used in the killing, the Court would not draw such an inference from the jury's verdict since the jury was not asked to determine whether the guns were the same guns used in the killing and, theoretically, the jury could have believed that the defendant tampered with evidence of a different specific crime or of an indeterminate crime. *Id.* ¶ 15. The same rule applies in this case. Although Defendant was found guilty of the second-degree murder, the district court could not simply assume that the jury determined that the tampering related to that offense where the jury could have theoretically found that he tampered with evidence of an indeterminate offense or of some other specific offense. Defendant's right to have the jury find, beyond a reasonable doubt, all of the elements of the offense was violated by the entry of a conviction for which the jury had not been instructed on all of the essential elements.

**{16}** We recognize that there is language in a number of New Mexico Supreme Court cases that suggests that the factors in Subsection (B) of the tampering statute are not essential elements of the offense, but those cases do not address the issue that we resolve today and are, therefore, not controlling. *See State v. Gamlen,* 2009-NMCA-073, ¶ 15, 146 N.M. 668, 213 P.3d 818 ("It is well established that cases are not authority for propositions

---

[1] We recognize the fact that the tampering relates to an indeterminate crime may itself be an element of the offense that must be found by the jury beyond a reasonable doubt, since this fact increases the punishment to that set for a fourth-degree felony, whereas, the crime is only a petty misdemeanor if the tampering relates to a misdemeanor or petty misdemeanor. *See* § 30-22-5(B)(3), (4). However, the defendant in *Alvarado* did not file a cross-appeal in order to make that argument, and Defendant does not make it here. Accordingly, we need not resolve this question. *See In re Doe*, 1982-NMSC-099, ¶¶ 2-3, 98 N.M. 540, 650 P.2d 824 (cautioning that an appellate court should not reach issues that the parties have failed to raise in their briefs).

not considered." (internal quotation marks and citation omitted)). In *State v. Jackson*, our Supreme Court examined the question of whether the tampering with evidence statute requires that the defendant tamper with evidence of a legislatively defined crime. 2010-NMSC-032, 148 N.M. 452, 237 P.3d 754. Relying on principles of statutory construction, *Jackson* held that it does not. *Id.* ¶ 9. In doing so, *Jackson* characterized Subsection (A) of the tampering statute as setting forth the "elements of the offense" and Subsection (B) as merely establishing "levels of punishment." *Id.* ¶¶ 8, 20. Despite this language, *Jackson* does not control our analysis in this case. *Jackson* came to the Court on a pretrial *Foulenfont* motion, which permits a defendant to make a legal argument that the facts alleged by the state, even if proven, would not constitute a crime under the applicable law. *Jackson*, 2010-NMSC-032, ¶ 4 n.1. The question on appeal in *Jackson* was not which elements of the offense had to be proven beyond a reasonable doubt, and nowhere did *Jackson* discuss the constitutional implications of characterizing some portions of the statute as elements and others as levels of punishment. Instead, *Jackson* looked narrowly at the question of whether tampering requires an identifiable underlying crime and determined that it does not because the plain language of Subsection (B) permits a conviction for tampering with evidence of an "indeterminate" offense. *Id.* ¶ 21 (internal quotation marks and citation omitted). *Jackson*'s conclusion is unaffected even if the factors in Subsection (B) are characterized as "elements" rather than just levels of punishment. Accordingly, we conclude that *Jackson*'s characterization does not determine the question at issue in this case. The other cases that have discussed the elements of tampering with evidence with reference only to Subsection (A) have also not addressed the question at issue here and are therefore not binding for the same reason. *See State v. Garcia*, 2011-NMSC-003, ¶ 13, 149 N.M. 185, 246 P.3d 1057; *State v. Rudolfo*, 2008-NMSC-036, ¶ 31, 144 N.M. 305, 187 P.3d 170; *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515; *State v. Johnson*, 2004-NMSC-029, ¶ 52, 136 N.M. 348, 98 P.3d 998; *State v. Rojo*, 1999-NMSC-001, ¶ 25, 126 N.M. 438, 971 P.2d 829.

**{17}** Although we hold that the failure to instruct the jury on one of the elements of the offense of third-degree tampering with evidence was error because it offended Defendant's rights under the Sixth and Fourteenth Amendments of the United States Constitution, we cannot conclude that the unpreserved error was fundamental. "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146. Although the omission of an essential element of an offense will often be found to be fundamental error, *see State v. Barber*, 2004-NMSC-019, ¶ 20, 135 N.M. 621, 92 P.3d 633, this is not always so, *see Orosco*, 1992-NMSC-006, ¶ 12. If it is clear that the missing element was established by the evidence at trial, the fact that the jury was not instructed on the element is not considered fundamental error. *Id.* In evaluating this question, we examine "the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *Barber*, 2004-NMSC-019, ¶ 19 (internal quotation marks and citation omitted).

8

**{18}** Here, we conclude that it was not. At trial, Defendant testified that, on the evening in question, he took his gun, shot once at the victim, and then took the same gun outside to the backyard and placed it under the house. The jury found, beyond a reasonable doubt, in doing so, Defendant hid the gun with the intent to prevent his apprehension, prosecution, or conviction. Separately, it also found, beyond a reasonable doubt, the act of shooting and killing the victim was second-degree murder, not manslaughter, and not justified by self-defense. As the only evidence at trial was that Defendant's act of hiding the gun was related to his act of shooting the victim and, as the jury concluded beyond a reasonable doubt that the shooting constituted a second-degree felony, the facts at trial established that the tampering related to a second-degree felony. Accordingly, the omission of this element from the jury instruction was not fundamental error. *See United States v. Cotton*, 535 U.S. 625, 632-33 (2002) (declining to reverse an unpreserved *Apprendi* error because the evidence of the element that was omitted from the jury instruction "was overwhelming and essentially uncontroverted" (internal quotation marks and citation omitted) and therefore its omission "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings").

**B.    A Witness's Comment on Defendant's Exercise of His Right to Remain Silent**

**{19}** During cross-examination of the detective who was testifying for the State, Defendant's attorney asked the detective whether a knife had been found in the alley behind Defendant's house. The detective said that a knife may have been found and then stated: "[T]he only reason I remember there might have been a knife is because . . . [Defendant] had a cut [o]n his foot and he told me that he jumped over the fence and he told me he cut his foot with that knife." Defendant's counsel asked: "[Defendant] told you that?" The detective answered: "This is after he was read his rights." At this point, Defendant's counsel objected and moved for a mistrial. Although it is not clear from the record that the witness actually testified that Defendant invoked his right to remain silent, the parties and the district court treated the testimony as if this was the case. The district court denied the motion.

**{20}** Defendant argues that, pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, the district court erred in denying his motion for a mistrial. We review the denial of a mistrial for an abuse of discretion. *State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437, 176 P.3d 1169. The legal question of whether there has been an improper comment on a defendant's silence is reviewed de novo. *State v. Pacheco*, 2007-NMCA-140, ¶ 8, 142 N.M. 773, 170 P.3d 1011.

**{21}** The Fourteenth Amendment's Due Process Clause protects against prosecutorial comment on a defendant's post-*Miranda* exercise of his Fifth Amendment right to remain silent. *See State v. DeGraff*, 2006-NMSC-011, ¶ 12, 139 N.M. 211, 131 P.3d 61. Therefore, a prosecutor is not permitted to elicit statements from a witness that the defendant invoked his right to remain silent and is not permitted to use a defendant's silence to impeach his credibility or create an inference of guilt in the minds of the jury. *State v. Foster*, 1998-

9

NMCA-163, ¶ 11, 126 N.M. 177, 967 P.2d 852.

{22} Here, however, the prosecutor did not elicit the comment. Defendant's attorney did. Recognizing this flaw in his argument, Defendant asserts that, under *State v. Wisniewski*, the detective was part of the prosecution team and his comment can therefore be attributed to the prosecutor. 1985-NMSC-079, ¶ 21, 103 N.M. 430, 708 P.2d 1031. *Wisniewski* holds that law enforcement personnel are part of the prosecution team for purposes of the Fourteenth Amendment's due process requirement that the prosecution provide exculpatory material to a defendant prior to trial. *Id.* Defendant provides no authority to support his contention that the rule is the same for purposes of commenting upon a defendant's exercise of his Fifth Amendment right to remain silent. Absent such citation, we may assume no such authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. In addition, in other circumstances where a witness for the state has made an isolated and unsolicited comment related to a defendant's exercise of his right to remain silent, such a comment has not required reversal on appeal. *See State v. Baca*, 1976-NMSC-015, ¶ 5, 89 N.M. 204, 549 P.2d 282 (holding that reversal was not warranted when a detective made an isolated, unsolicited comment referring to the defendant's post-*Miranda* refusal to speak with the police); *State v. Wildgrube*, 2003-NMCA-108, ¶¶ 23-24, 134 N.M. 262, 75 P.3d 862 (holding that when a police officer made an unsolicited comment regarding the defendant's post-*Miranda* silence and the prosecutor did not exploit the reference by a sking related questions or referring to it in closing argument, there was no prosecutorial misconduct requiring reversal). Accordingly, Defendant has failed to demonstrate error on this basis.

**C.      Admission of Evidence That Defendant Had Ammunition for Multiple Weapons**

{23} At trial, a crime scene technician testified that she observed a variety of different types of ammunition at Defendant's home. Some of this ammunition fit the kind of gun that was used in this case. Defendant did not object to this testimony at the time it was offered. Later, outside of the presence of the jury, the parties made arguments about the admissibility of certain exhibits, including a photograph of some of the ammunition, as well as the ammunition itself. At that point, Defendant belatedly moved to strike the technician's testimony on grounds of relevance. He also argued that the photograph and the ammunition should not be admitted. The district court admitted the ammunition itself and stated that the photograph of the ammunition could be used at trial, but not admitted as an exhibit. The technician then testified again about the three different kinds of ammunition, stating that only one of them could be fired from the gun used in this case.

{24} Defendant asserts that, pursuant to *Franklin* and *Boyer*, the district court abused its discretion in admitting the evidence relating to the bullets that could not be fired from the gun that was used in this case. However, Defendant provides no rationale in support of this assertion and provides no authority that would demonstrate that the district court's admission of this evidence constituted reversible error. Accordingly, we decline to address this argument. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181

(explaining that this Court does not review unclear or undeveloped arguments).

## D.  Claims of Error in the Jury Instructions

### 1.  Imperfect Self-Defense

**{25}**  Before the case was submitted to the jury, Defendant asked the district court to instruct the jurors on his claim of imperfect self-defense.  The district court refused because, under New Mexico case law, no such instruction is warranted.  Defendant asserts that the district court erred in refusing to provide the requested instruction.  "The propriety of jury instructions given or denied is a mixed question of law and fact."  *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted).  We review such questions de novo.  *Id.*

**{26}**  "Imperfect self-defense occurs when [a person] uses excessive force while otherwise lawfully engaging in self-defense."  *State v. Henley,* 2010-NMSC-039, ¶ 20, 148 N.M. 359, 237 P.3d 103.  However, in New Mexico, imperfect self-defense is not considered to be a true affirmative defense for which a defendant is entitled to an instruction.  As our Supreme Court has explained, the term "imperfect self-defense" is misleading because, when a person kills another while engaging in imperfect self-defense, the killing is not legally justified.  *State v. Abeyta*, 1995-NMSC-051, ¶ 17, 120 N.M. 233, 901 P.2d 164, *abrogated on other grounds by State v. Campos*, 1996-NMSC-043, 122 N.M. 148, 921 P.2d 1266.  Instead, a claim of imperfect self-defense "simply presents an issue of mitigating circumstances that may reduce murder to manslaughter."  *Id.*  Because it is not a true affirmative defense, our Supreme Court has held that no imperfect self-defense instruction is warranted.  *Id.* ¶ 17 n.4 ("Since 1917 this 'imperfect' self-defense has been adequately covered under our jury instructions on manslaughter.  We see no reason to change our jury instructions to accommodate a new phrase covering a legal concept that has long been a part of New Mexico law.").  Instead, any issues raised by a defendant's claim of imperfect self-defense are properly addressed if the jury is instructed on voluntary manslaughter.  *Id.*  The jury in this case was so instructed, and Defendant was permitted to argue that, if he used excessive force in response to any threat posed by the victim, the jury should find him guilty of voluntary manslaughter, rather than murder.  The district court did not err in denying Defendant's proposed instruction on imperfect self-defense.

### 2.  Voluntary Manslaughter

**{27}**  Defendant also asserts that the district court created a fundamental error at trial when it failed to instruct the jury that the State was required to disprove that he acted in self-defense as one of the elements of voluntary manslaughter.  However, Defendant was not convicted of voluntary manslaughter, and this Court will not review an error in an instruction on a crime of which he was not convicted.  *See State v. Benally*, 2001-NMSC-033, ¶ 10 n.1, 131 N.M. 258, 34 P.3d 1134 (declining to address a claim of error in a voluntary manslaughter instruction when the defendant was not found guilty of voluntary manslaughter

11

and was instead found guilty of second-degree murder); *State v. Cunningham*, 2000-NMSC-009, ¶¶ 7, 8 n.3, 128 N.M. 711, 998 P.2d 176 (refusing to review a claim of fundamental error in the omission of the element negating self-defense in a voluntary manslaughter instruction when the defendant was not found guilty of voluntary manslaughter and was instead convicted of first-degree murder). This is not a circumstance where the instruction was so defective that it amounted to no instruction on voluntary manslaughter. *Cf. State v. Benavidez*, 1980-NMSC-097, ¶ 5, 94 N.M. 706, 616 P.2d 419 (holding that the defendant's first-degree murder conviction must be reversed based on the district court's error in refusing to give an instruction on voluntary manslaughter).

### 3. Sufficiency of the Evidence

**{28}** Defendant contends that there was insufficient evidence to support his convictions for second-degree murder and for third-degree tampering with evidence. "In reviewing the sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Rojo*, 1999-NMSC-001, ¶ 19. "It is [the appellate courts'] duty to determine whether any rational jury could have found the essential facts to establish each element of the crime beyond a reasonable doubt." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930.

**{29}** With respect to Defendant's conviction for second-degree murder, the State was required to prove, beyond a reasonable doubt, Defendant killed the victim by acts that (1) he knew created a strong probability of death or great bodily harm, (2) he did so without sufficient provocation, and (3) he did not act in self-defense. The jury was instructed that the killing in this case was in self-defense if (1) there was an appearance of immediate danger of death or great bodily harm to Defendant or his family as a result of the victim's actions, (2) Defendant was in fact put in fear and killed the victim because of this fear, and (3) a reasonable person in the same circumstances would have acted as Defendant did. It was instructed that sufficient provocation "can be any action, conduct[,] or circumstances which arouse anger, rage, fear, sudden resentment, terror[,] or other extreme emotions" so long as the provocation was such that it would cause an ordinary person of average disposition to temporarily lose self-control and would affect that person's ability to reason. It was also instructed that provocation is not legally sufficient if an ordinary person would have "cooled off" before acting.

**{30}** Defendant contends that the evidence was insufficient to support his convictions because there was testimony that the victim came to Defendant's house and threatened to shoot at the house, then went back to his car and, as he was driving away, leaned down in such a manner that Defendant believed the victim was reaching for a gun. As a consequence, Defendant suggests that either self-defense or sufficient provocation was established as a matter of law. However, Defendant's view of the evidence is in the light most favorable to himself, rather than the light most favorable to the verdict, which is contrary to the manner in which it must be viewed on appeal. At trial, Defendant testified that he did not actually

see the victim with a gun, and evidence was presented from which the jury could reasonably conclude that the victim was shot in the back as he was driving away from Defendant's house. Furthermore, the only evidence that the victim threatened to shoot at the house came from the testimony of Defendant and his girlfriend, and the jury was not required to credit this evidence. *See Rojo*, 1999-NMSC-001, ¶ 19 (stating that "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts"). Accordingly, there was sufficient evidence to permit a reasonable jury to determine that Defendant was not acting in self-defense or as a result of legally sufficient provocation.

**{31}** With respect to his conviction for third-degree tampering with evidence, although we have concluded that the instruction on this charge was improper because it did not instruct the jury that it must find that Defendant's tampering related to evidence of one of the types of offenses listed in Section 30-22-5(B), we nevertheless assess the sufficiency of the evidence with reference to the jury instructions that were provided at trial. *See Dowling*, 2011-NMSC-016, ¶ 18 ("[The appellate courts] review [the d]efendant's [sufficiency] claim under the erroneous instruction provided to the jury at trial."). The jury instruction provided that the State was required to prove, beyond a reasonable doubt, Defendant hid the gun with the intent to prevent his apprehension, prosecution, or conviction. Defendant contends that his testimony that he hid the gun "under the house because he was nervous and really did not know what was going on" established that he did not act with the necessary intent. Again, Defendant's argument fails to account for the proper standard of review on appeal, as he asks this Court to view the evidence in the light most favorable to himself. A person's intent may be established based upon circumstantial evidence. *State v. Guerra*, 2012-NMSC-027, ¶ 13, 284 P.3d 1076 (stating that "intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence" (alteration, internal quotation marks, and citation omitted)). Defendant testified that he shot at the victim and then went and placed the gun under the house. An officer testified that the gun was found in a crawlspace under the house that was concealed behind a dog house and near a gate where a dog had been chained. Another officer testified that, after Defendant was arrested, he made a phone call from the detention center in which he told a person to have someone "go underneath the house . . . where the black dog was . . . because he had a water leak." Taken together, this evidence supports an inference that Defendant hid the gun with the intent to prevent his apprehension, prosecution, or conviction.

## III. CONCLUSION

**{32}** Because the only error that Defendant has established on appeal was not preserved at trial and it did not constitute fundamental error, we affirm Defendant's convictions.

**{33}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

13

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for _State v. Herrera_, No. 31,874**

**APPEAL AND ERROR**
Fundamental Error
Preservation of Issues for Appeal
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Due Process
Self-Incrimination

**CRIMINAL LAW**
Elements of Offense
Murder
Tampering with Evidence
Voluntary Manslaughter

**CRIMINAL PROCEDURE**
Jury Instructions
Misconduct by Prosecutor
Mistrial
Right Against Self-Incrimination
Right to Trial by Jury
Search and Seizure
Self Defense
Witnesses