This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36062**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RUBEN FLOREZ a/k/a
RUBEN FLORES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
William G.W. Shoobridge, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant Ruben Florez[1] appeals his criminal conviction for three counts of assault on a peace officer. Defendant contends that the (1) failure to instruct the jury on the definition of "battery," and (2) failure to instruct the jury on the reasonableness of the

---

1Defendant is also known as "Ruben Flores."

officers' belief that Defendant was about to inflict a battery on them constituted fundamental error. Defendant further argues that there was insufficient evidence to uphold the verdict on these elements and insufficient evidence that Defendant's conduct challenged the officers' authority, requiring dismissal of the charges against him. Because the elements omitted from the jury instructions were clearly established by the undisputed evidence, we discern no fundamental error. For the same reasons and because Defendant's conduct plainly challenged the officers' authority, the verdict was supported by sufficient evidence. Accordingly, we affirm.

**BACKGROUND**

**{2}**      On December 21, 2014, Hobbs Police Department Officers James Grimes, Douglas Evans, and Brandon Marinovich (collectively, the Officers) responded to a report of domestic violence in progress. Upon arriving at a small home, the Officers found Defendant and approximately five other individuals, most of whom were speaking over one another loudly. Shortly after the Officers' arrival, Defendant's cousin, Victor Florez, pushed Officer Evans in the chest, leading Officer Grimes to restrain Victor on the ground. Upon Officer Grimes "taking down" Victor, Defendant (who had been sitting on a couch) stood up and assumed a fighting stance toward Officers Evans and Marinovich, keeping his right hand behind his back, and making a fist with his left hand. Officer Evans drew his service weapon, and Officer Marinovich drew his taser. Defendant retreated only after the Officers repeatedly told him to do so. Officers Evans and Marinovich then arrested Victor, and as they removed him from the residence, Victor head-butted Officer Marinovich. Meanwhile, Officer Grimes stayed behind to get contact information for Defendant and the other individuals in the home. In response, Defendant stood up and advanced toward Officer Grimes in an aggressive manner, this time with both hands raised and fisted. Officer Grimes drew his taser and directed Defendant to stop. Two women then moved between Officer Grimes and Defendant, yelling at Officer Grimes to leave, and imploring Defendant to back off. In order to deescalate the situation, Officer Grimes departed.

**{3}**      Defendant was later arrested and charged with three counts of assault on a peace officer, a misdemeanor, in violation of NMSA 1978, Section 30-22-21(A)(2) (1971). At trial, the State called Officers Grimes, Marinovich, and Evans, who testified as set forth above. Defendant neither testified nor offered evidence in his defense. The jury returned a verdict of guilty on all three counts. This appeal followed.

**Discussion**

**{4}**      Defendant appeals his conviction on two grounds. First, he contends that the jury instructions given were fundamentally erroneous because they failed to provide the statutory definition of "battery" to the jury, and failed to require the jury to consider whether the Officers' belief that they were about to receive a battery was reasonable. Second, he contends that the evidence was insufficient to support his conviction, because the evidence does not show that the Officers had reason to fear for their

personal safety, nor does it show that Defendant meaningfully challenged their authority. We address each argument in turn.

**Omissions in the Jury Instructions Did Not Constitute Fundamental Error**

**{5}**     "The propriety of the jury instructions given by the district court is a mixed question of law and fact requiring de novo review." *State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297. Because Defendant did not object to the absence of any elements from the jury instructions when they were given, and therefore failed to preserve any error, we review only for fundamental error. *See* Rule 12-321(A), (B)(2)(c) NMRA; *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." (citation omitted)); *State v. Sosa*, 1997-NMSC-032, ¶ 23, 123 N.M. 564, 943 P.2d 1017 (limiting review to fundamental error where no objection was made to inaccurate instruction, or no accurate instruction was proffered). Only a miscarriage of justice warrants a finding of fundamental error. *State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146; *see also State v. Jett*, 1991-NMSC-011, ¶ 19, 111 N.M. 309, 805 P.2d 78 (stating the doctrine of fundamental error applies "under exceptional circumstances and solely to prevent a miscarriage of justice"). Error that is fundamental goes "to the foundation of the case or take[s] from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Garcia*, 1942-NMSC-030, ¶ 25, 46 N.M. 302, 128 P.2d 459. Thus, where a case "shock[s] the conscience of the court," either due to the defendant's obvious innocence, or due to a mistake in the process which "makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused[,]" the doctrine of fundamental error requires reversal. *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted).

**{6}**     Here, Defendant was convicted for three counts of assault on a peace officer, in violation of Section 30-22-21(A)(2), which defines the offense as "any unlawful act, threat or menacing conduct which causes a peace officer while he is in the lawful discharge of his duties to reasonably believe that he is in danger of receiving an immediate battery." Battery upon a peace officer is, in turn, defined as the "unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." NMSA 1978, § 30-22-24(A) (1971).[2]

**{7}**     At the conclusion of Defendant's trial, the jury was instructed as follows, with each count listing one of the three Officers:

> For you to find [D]efendant guilty of assault upon a peace officer, . . . the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

---

2This mirrors the language of the general battery statute: "[T]he unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." NMSA 1978, § 30-3-4 (1963).

1.     [D]efendant . . . made an action that made [the Officer] believe he was about to receive a battery;

2.     [D]efendant's conduct challenged the authority of [the Officer];

3.     This happened in New Mexico on or about the 21st day of December, 2014.

**{8}**     With respect to his argument that a definition for "battery" should have been included in the foregoing instructions, Defendant refers to the Uniform Jury Instruction (UJI) for assault on a peace officer, which incorporates the definition of battery as an element of the offense. *See* § 30-22-24; UJI 14-2200A(2) NMRA (requiring the jury to consider whether the defendant's conduct caused the officer "to believe the defendant was about to intrude on [the officer's] bodily integrity or personal safety by touching or applying force to [the officer] in a rude, insolent or angry manner"). We note that this instruction also incorporates the general instruction on unlawful touching. UJI 14-132 NMRA (providing, in relevant part, that "[f]or the act to have been unlawful it must have been done without consent and . . . to intrude upon the bodily integrity or personal safety of [the victim)]" (alterations omitted)). Defendant asserts that the jury was likely confused or misdirected in the absence of this definitional instruction on "battery" because the jury was simply left to define the term as they saw fit. The State counters that there are no facts in the record that put the definition of battery in issue, because "the only evidence presented at trial regarding what the officers believed was that [Defendant] was going to punch them."[3]

**{9}**     Defendant is correct that, in analyzing whether an alleged omission from jury instructions was fundamental error, we begin by determining "whether a reasonable juror would have been confused or misdirected" by the omission. *State v. Sutphin*, 2007-NMSC-045, ¶ 19, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted); *see also Benally*, 2001-NMSC-033, ¶ 12 ("[J]uror confusion or misdirection may stem . . . from instructions which, through omission . . . , fail to provide the juror with an accurate rendition of the relevant law."). However, "we consider any possible confusion in the context of jury instructions as a whole[,]" *State v. Reed*, 2005-NMSC-031, ¶ 55, 138 N.M. 365, 120 P.3d 447, and "we examine the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case[.]" *State v. Herrera*, 2014-NMCA-007, ¶ 17, 315 P.3d 343 (internal quotation marks and citation omitted). In most cases, "the failure to instruct on a definition or amplification of an essential element, even when called for in an official UJI Use Note, does not rise to the level of fundamental error." *See Barber*, 2004-NMSC-019, ¶ 20 (agreeing that a missing definition does not typically result in the sort of "fundamental unfairness" that undermines the integrity of the judicial system). Fundamental error is

---

[3]The State does not dispute that Defendant would have been entitled to a definitional instruction for "battery," had he requested it. *See Barber*, 2004-NMSC-019, ¶ 9 (stating that, in a fundamental error analysis for failure to give a jury instruction, the first question is whether the defendant would have been entitled to the instruction had the defendant requested it).

implicated only when a missing definitional instruction implicates "a critical determination akin to a missing elements instruction[.]" *Id.* ¶ 26 (quoting *State v. Mascareñas*, 2000-NMSC-017, ¶ 20, 129 N.M. 230, 4 P.3d 1221). A missing elements instruction, in turn, ordinarily *does* result in fundamental error, because it renders the defendant's guilt "so doubtful that it would shock the conscience to permit the verdict to stand." *Sosa*, 1997-NMSC-032, ¶ 24; *see also State v. Osborne*, 1991-NMSC-032, ¶¶ 1, 41, 111 N.M. 654, 808 P.2d 624 (finding fundamental error where the defendant was charged with criminal sexual contact with a minor, and jury instructions failed to require the jury to resolve the issue, raised by the evidence presented, of whether the defendant's touching was done innocently or in a sexual and unlawful manner). In other words, an omitted elements instruction constitutes fundamental error where it leaves us "with no way of knowing whether the conviction was or was not based on the lack of the essential element." *State v. Samora*, 2016-NMSC-031, ¶ 27, 387 P.3d 230 (internal quotation marks and citation omitted). On the other hand, if it is clear that the missing element of the instruction "was established by the evidence at trial, the fact that the jury was not instructed on the element is not considered fundamental error." *Herrera*, 2014-NMCA-007, ¶ 17 (citing *Orosco*, 1992-NMSC-006, ¶ 12). Thus, even where an omitted definitional instruction may be akin to an omitted elements instruction, "[a] definitional instruction is not necessary if, as matter of law, no rational juror could find" that the definitional requirements were not met. *Reed*, 2005-NMSC-031, ¶ 57.

**{10}**    Here, at the time of Defendant's trial on August 3, 2015, the UJI for assault on a peace officer (UJI 14-2200A) did not exist.[4] Where no UJI sets forth the essential elements of a criminal offense, an instruction that substantially follows the language of the relevant statute suffices. *State v. Suazo*, 2017-NMSC-011, ¶ 27, 390 P.3d 674. Arguably, the instruction to the jury in Defendant's case ought to have incorporated and followed the definition from the battery statute, Section 30-22-24, as UJI 14-2200A now does. However, we conclude that the omission of a definition for battery would not have confused the jury in this case, because the only evidence presented at trial showed that the Officers anticipated a battery from Defendant. Officer Evans testified that Defendant had become more aggressive and began yelling before he assumed a fighting stance, and that Officer Evans drew his service weapon because he was "scared and worried" that Defendant, who was apparently concealing something in his right hand, looked like he was "about to attack." Officer Marinovich testified that Defendant "advanced" towards him and Officer Evans, and that Officer Marinovich was in fear that Defendant was "coming after myself and Officer Evans and that he was going to strike one of us." Similarly, Officer Grimes testified that Defendant approached him with clenched fists; that Officer Grimes "assumed [Defendant] was going to fight;" and that Officer Grimes drew his taser because he is permitted to do so when he feels that either he or a civilian may be injured or battered. During closing argument, the prosecutor also explained, "Officer Evans said he thought he was going to get hit. That's a battery. A battery is somebody hits you, punches you." Under these circumstances, "no rational juror" could have understood the Officers' belief that they were about to receive a "battery" as anything other than a belief that they were about to receive an intrusion upon their

---

4 UJI 12-2200A did not go into effect until December 31, 2016 (pursuant to Supreme Court Order No. 16-8300-008).

"bodily integrity or personal safety" through an "angry" or "insolent" touch from Defendant. *See* § 30-22-24; UJI 14-2200A(2); *Reed*, 2005-NMSC-031, ¶ 57.

**{11}** Moreover, we agree with the State that if there is no evidence to place the omitted element in issue, and the only evidence in the record establishes the element, there is no fundamental error. *See Orosco*, 1992-NMSC-006, ¶¶ 10-12, 20 (holding that element of unlawful touching was "undisputed and indisputable," and therefore not in issue because the defense presented "[n]o other version of the facts" wherein the touching was anything other than unlawful, relying instead on a theory that the incident had never occurred). For all the reasons set forth above, in this case, the definition of "battery" was not in issue because the evidence supported no version of the facts wherein the Officers feared anything other than an immediate battery. Thus, the district court did not fundamentally err through omitting a definitional instruction for that term.

**{12}** With respect to the reasonableness of the Officers' belief, both the assault statute and the UJI require an officer's belief that he or she is "in danger of receiving an immediate battery" to be reasonable. Section 30-22-21(A)(2); UJI 14-2200A(3) (requiring the jury to consider whether a "reasonable person in the same circumstances as [the officer] would have had the same belief" that he or she was about to receive a battery). Thus, the jury should have been instructed to consider whether the Officers' belief that they were about to receive a battery was a reasonable one, and the omission of this element would, as stated above, ordinarily constitute fundamental error. *See Barber*, 2004-NMSC-019, ¶ 20; *Osborne*, 1991-NMSC-032, ¶ 41. However, again, if it is clear that this element of the instruction was not in issue, and "there can be no dispute that the element was established," its omission was not fundamental error. *Orosco*, 1992-NMSC-006, ¶¶ 10-12; *see id.* ¶ 20 (holding that element of unlawful touching was "undisputed and indisputable" when "no rational jury could have concluded that [the d]efendant had committed the acts without also determining that the was acts were performed in the manner proscribed by law"); *see also State v. Nevarez*, 2010-NMCA-049, ¶ 26, 148 N.M. 820, 242 P.3d 387 (reasoning that "[t]here is no miscarriage of justice where, despite any misunderstanding by the jury, the circumstances of the case demonstrate that all the necessary elements of the offense were satisfied beyond a reasonable doubt").

**{13}** By its verdict, we know that the jury in this case found that Defendant intentionally acted in a manner that challenged the Officers' authority and caused the Officers to believe that they were about to receive a battery. *Cf. Norwest Bank N.M., N.A. v. Chrysler Corp.*, 1999-NMCA-070, ¶ 40, 127 N.M. 397, 981 P.2d 1215 (reasoning that we assume the jury follows instructions absent evidence to the contrary). We also know that, in reaching this conclusion, the jury considered whether the Officers' testimony was, generally, reasonable, as the district court had so instructed. *See id.* The undisputed testimony of the Officers was that Defendant advanced on all three Officers in a fighting stance with one or both fists raised, immediately following the attack of his cousin Victor, and again immediately following Victor's arrest. Under these circumstances, there is ample evidence to establish the reasonableness of the Officers' belief that they were about to receive a battery.

**{14}** The question, therefore, is "whether there was any evidence or suggestion in the facts" placing the element of reasonableness in issue. *Orosco*, 1992-NMSC-006, ¶ 10. In making this inquiry, we do not reweigh the evidence; rather, we look for any factual indication, "however slight," that reasonableness was disputed. *See id.*; *see Nevarez*, 2010-NMCA-049, ¶ 9 (stating that "we will not re-weigh the credibility of the witnesses at trial or substitute [our] determination of the facts for that of the jury"). In other words, was there any version of the facts presented that may have allowed a rational juror to find that the Officers' belief regarding an imminent battery was *unreasonable*? *See Orosco*, 1992-NMSC-006, ¶ 11 (analyzing whether there was anything in the facts "to suggest that the touchings, if they occurred, might have involved the provision of medical care, custodial care or affection, or any other lawful purpose"). Although Defendant argues that the Officers' purported fear was unfounded (and, presumably, unreasonable) because Defendant "did not actually approach the officer[s] as if to threaten an attack[,]" or otherwise cause the Officers "to fear for their personal safety," these arguments are not evidence. *State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("[M]ere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). The jury having credited the Officers' belief and Defendant's challenge to their authority, we are hard pressed to understand how the belief that a battery was imminent could be unreasonable under the circumstances described, absent an alternative factual version of, or explanation for Defendant's behavior.

**{15}** At one point, defense counsel suggested (on cross-examination of Officer Marinovich) that Defendant stood up after Officer Grimes "took down" Victor out of concern for Victor, who was "laying on the floor hurting." However, in response, Officer Marinovich testified that "when you get up making a fist, looking at two officers, in my training and experience, that's not checking on someone that's on the ground." Defense counsel also asked Officer Marinovich if Defendant got up in order to stop his cousin Victor from challenging the Officers, but Officer Marinovich answered (and the other two Officers also testified) that this could not have been the reason for Defendant's actions, as Officer Grimes had already "taken down" Victor at the time that Defendant got up in a fighting stance with his fist raised. Officer Marinovich explained, "I took it as a threat, I was in fear [Defendant] was coming after me and Officer Evans and he was going to strike one of us," that "his body language" made Officer Marinovich think he was going to hurt someone, that Defendant was "not listening" even after the Officers' weapons were drawn, and that if Defendant "took one more step, and swung his fist, he could have struck myself or Officer Evans."

**{16}** In sum, we are unable to find even slight evidence in the record from which a rational juror could conclude that it was unreasonable for the Officers to fear a battery.[5]

---

5Defense counsel's closing argument also contained mischaracterizations of the evidence, which do not factor into our analysis. For instance, counsel summarized the evidence as showing that Defendant only moved in the Officers' "general direction" when he stood up from the couch, and that someone was calling for an ambulance for Victor while this was happening. Neither of these points is based on the testimony, which was that Defendant advanced on the Officers aggressively, and that Victor did not show signs of unresponsiveness (he apparently lost consciousness, briefly), leading a woman in the room to say that he needed an ambulance, until after the first

Notably, defense counsel's primary theory at trial was one of mistaken identity: that the prosecution had charged the wrong "Ruben Florez" with assault. Indeed, in closing, defense counsel told the jury that everything "this Ruben Florez" did on the day in question was "immaterial" because the State failed to prove beyond a reasonable doubt that Defendant was the correct Ruben Florez. We are therefore left with the conclusion that the reasonableness of the Officers' belief was "undisputed and indisputable" and not in issue at trial. *See Orosco*, 1992-NMSC-006, ¶ 20. Accordingly, the omission of this element from the jury instructions did not constitute fundamental error. *See Herrera*, 2014-NMCA-007, ¶¶ 17-18.

**Sufficient Evidence Supported the Verdict**

**{17}**   "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "[O]ur role is to determine whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Largo*, 2012-NMSC-015, ¶ 30 (internal quotation marks and citation omitted). "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Pitner*, 2016-NMCA-102, ¶ 6, 385 P.3d 665 (internal quotation marks and citation omitted).

**{18}**   As an initial matter, Defendant argues that we should apply the sufficiency analysis to the correct instructions, *not* to the instructions as they were actually given. Ordinarily, the jury instructions given are the "law of the case" for purposes of an analysis of the sufficiency of the evidence. *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. Defendant argues, citing inapposite case law, that *Smith* is distinguishable, and that the jury instructions given cannot be the "law of the case" where such instructions result in lowering the State's burden of proof, as this would violate the Defendant's due process right, under the Fourteenth Amendment, to be tried on each element of the offense. We need not resolve this argument because, even including the omitted elements of an instruction on the definition of "battery" and on reasonableness, the evidence was sufficient to support the verdict. Indeed, for all the reasons discussed in the section above, there was sufficient evidence for a "rational fact-finder" to "determine beyond a reasonable doubt" that the Officers in this case reasonably anticipated an immediate battery from Defendant. *See Garcia*, 2005-NMSC-017, ¶ 12; *see also State v. Ford*, 2007-NMCA-052, ¶ 29, 141 N.M. 512, 157 P.3d 77

---

incident, when Defendant had returned to his position on the couch. Before the second incident, Victor had regained consciousness and had just head-butted Officer Marinovich.

(finding sufficient evidence to support conviction for assault on a peace officer where reasonable people "being aggressively approached by a man, who is shouting and threatening to punch them, would fear for their personal safety").

**{19}** Defendant's only other argument that insufficient evidence supported the verdict is with respect to the element of a "challenge to [the Officers'] authority." The requirement that Defendant's conduct pose a "challenge to the officer's authority" derives from our Courts' interpretation of the "unlawful act" element in the assault statute. *See* § 30-22-21(A)(2); UJI 14-2200A. The Use Notes for the current instruction on assault on a peace officer, UJI 14-2200A, refer to *State v. Padilla*, 1997-NMSC-022, ¶ 11, 123 N.M. 216, 937 P.2d 492,[6] a case in which the Supreme Court held that, for purposes of statute defining battery on a peace officer, Section 30-22-24, to show unlawfulness, the state must show "proof of injury or conduct that threatens an officer's safety or *meaningfully challenges* his or her authority[.]" (Emphasis added.)

**{20}** Defendant argues that no sufficient evidence supports a finding that he meaningfully challenged the Officers' authority in this case because there was "no evidence" that Defendant's conduct "actually undermined or interfered with any of the officers' abilities to carry out their duties or maintain control of the situation." Defendant candidly admits that no legal authority requires such a showing. We have declined to "define the legal boundaries of a 'meaningful challenge' to authority," *State v. Jones*, 2000-NMCA-047, ¶ 14, 129 N.M. 165, 3 P.3d 142, and we find no law interpreting the phrase in the context of the assault statute. However, *Padilla* cited with approval *State v. Ortega*, 1992-NMCA-003, ¶ 15, 113 N.M. 437, 827 P.2d 152, in which we highlighted the legislative purpose of the battery statute: to "protect the safety of peace officers, and to avoid a challenge to their authority." *Padilla*, 1997-NMSC-022, ¶ 5 (emphasis, omission, and alterations omitted). We have previously held—in a case involving the charge of battery on a peace officer—that disobeying a detective's orders to stay back, and slapping the detective's hand while saying, "You don't have to put your fingers in my face[,]" constituted a "meaningful challenge" to an officer's authority. *State v. Cooper*, 2000-NMCA-041, ¶¶ 1, 13, 129 N.M. 172, 3 P.3d 149. We have also held that "spitting upon an officer from the rear seat of the officer's car" may constitute a " 'meaningful challenge' to the authority the officer was lawfully exercising over [an arrestee] pursuant to his arrest for DWI." *Jones*, 2000-NMCA-047, ¶ 15. Neither of these cases suggests that "actual[] . . . interfere[nce] with [an] officer's abilities to carry out their duties or maintain control" is required for a finding of a "meaningful challenge" to an officer's authority.

**{21}** However, even under this standard, we conclude there was sufficient evidence of a "meaningful challenge" here. Defendant aggressively advanced on Officers Evans and Marinovich immediately following Victor's attack, and did not obey the Officers' orders to back up and sit down for approximately fifteen to twenty seconds, during which time the Officers had weapons trained on Defendant, and were unable to assist

---

[6]Actually, Use Note No. 3 of UJI 14-2200A contains a citation error and erroneously refers to *State v. Padilla*, 1996-NMCA-072, 122 N.M. 92, 920 P.2d 1046. Based on the discussion of the case therein, it is clear that our Supreme Court intended to refer to the case cited here.

Officer Grimes in restraining Victor. Moreover, Defendant interfered with Officer Grimes' investigation when, in response to Officer Grimes' request for contact information, Defendant did not comply, but instead advanced on Officer Grimes with clenched fists, leading Officer Grimes to pull his taser and leading other individuals to intervene. In fact, in order to de-escalate the situation, Officer Grimes departed without obtaining the requested information. This evidence is adequate to support the conclusion that Defendant interfered in the Officers' ability to carry out their duties, and meaningfully challenged the Officers' authority. Therefore, sufficient evidence supported the verdict on this element. *See Largo*, 2012-NMSC-015, ¶ 30.

**Conclusion**

**{22}**     For all the reasons stated above, the district court did not commit fundamental error by omitting the elements from the jury instructions for assault on a peace officer. Additionally, and because Defendant's conduct plainly challenged the Officers' authority, the verdict was supported by sufficient evidence. Thus, we affirm.

**{23}     IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JAMES W. WECHSLER, Judge Pro Tempore**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**